**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | |
|---|---|
| **L.M.**, a minor by and through his father and stepmother and natural guardians, Christopher and Susan Morrison, <br><br> *Plaintiff,* <br><br> v. <br><br> **TOWN OF MIDDLEBOROUGH; MIDDLEBOROUGH SCHOOL COMMITTEE**; **CAROLYN J. LYONS**, Superintendent of the Middleborough Public Schools, in her official capacity; and **HEATHER TUCKER**, acting Principal of Nichols Middle School, in her official capacity, <br><br> *Defendants.* | Civil Case No.: <br><br> **VERIFIED COMPLAINT** <br><br> **Jury Trial Demanded** |

**PLAINTIFF'S VERIFIED COMPLAINT**

Plaintiff L.M., by and through his father and stepmother and natural guardians, Christopher Morrison and Susan Morrison, and for his Verified Complaint against Defendants, hereby states as follows:

**INTRODUCTION**

1.    Throughout the entire United States, and much of the world, a debate rages on the very nature of human identity and existence. Medical doctors and psychiatrists, school boards and teachers, politicians and citizens, parents and children are all engaged in the debate about what makes a person a man, a woman, a boy, a girl, or even whether those categories themselves have any meaning at all.

2.    The Constitution guarantees a freedom of thought that includes a freedom to differ. "But freedom to differ is not limited to things that do not matter much. That would be a mere shadow of freedom. The test of its substance is the right to

differ as to things that touch the heart of the existing order." *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). There are perhaps no questions that "touch the heart of the existing order" more than those concerning the nature of human existence itself.

3. The Constitution protects this freedom to differ, in part, by prohibiting the government from adopting and enforcing a set of approved views on these matters in America's public schools. "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *Id.*

4. Defendants have abandoned this guiding light and adopted one particular view on this subject: that a person's subjective identity determines whether a person is male or female, not a person's sex. Defendants have expressed this view through their own speech and instituted annual, school-wide events celebrating their view and encouraging students to engage in their own speech on this subject— as long as the students express the viewpoint Defendants approve.

5. Compounding their unlawful adoption of an orthodoxy in this area, they have created and implemented a Speech Policy which Defendants admit permits students to express viewpoints supporting Defendants' view of gender identity but forbids students from expressing a contrary view.

6. L.M., a middle school student at Nichols Middle School ("NMS"), has observed Defendants expressing their favored view about gender identity. L.M. has a different view of this fundamental matter, informed by his scientific understanding of basic biology that there are only two sexes, male and female, and that a person's gender (their status as a boy or girl, man or woman) is inextricably tied to sex.

7.    Pursuant to their policies and practice, Defendants also permit students to convey a multitude of messages concerning virtually unlimited topics on their shirts at NMS. L.M. has observed many of his schoolmates wearing shirts with messages on them.

8.    Yet, on March 21, 2023, Defendant Tucker ordered L.M. to remove his shirt with the message "There are only two genders" at school. This is a picture of the shirt L.M. desires to wear:



9.    After L.M. politely declined to remove the shirt, Defendant Tucker indicated that he would not be able to return to class if did not remove the shirt. As a result, L.M. was forced to leave school for the day.

10.    L.M.'s shirt caused no disruptions at NMS.

11.    Defendants prohibited L.M. from wearing his "There are only two genders" shirt pursuant to their Dress Code that prohibits messages on clothing that "state, imply, or depict hate speech or imagery that target groups based on race, ethnicity,

gender, sexual orientation, gender identity, religious affiliation, or any other classification" (the "Speech Policy").

12.   Defendants' censorship of L.M.'s message, and the Speech Policy and practice on which that censorship was based, violate the First and Fourteenth Amendments to the United States Constitution.

13.   Preliminary injunctive relief is necessary because L.M. desires to immediately wear his "There are only two genders" shirt, and shirts with similar messages, to school but is self-censoring his speech because Defendants have enforced and will continue to enforce their Speech Policy against him, which will subject him to the escalating discipline outlined in those policies for repeat infractions, up to and including suspension.

## JURISDICTION & VENUE

14.   This is a civil rights action that raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

15.   This Court has original jurisdiction over these federal claims under 28 U.S.C. §§ 1331 and 1343.

16.   This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and FED. R. CIV. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

17.   Venue is proper in this district and this division pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in this district and because all of the acts giving rise to this action occurred in this district and division.

## PLAINTIFF

18.    L.M., a minor, is a seventh-grade student at Nichols Middle School and, at all times relevant to this Complaint, a resident of Plymouth County, Massachusetts.

19.    Christopher Morrison is L.M.'s father and natural guardian. Susan Morrison is L.M.'s stepmother and legal guardian. At all times relevant to this Complaint, Christopher and Susan are residents of Plymouth County, Massachusetts.

## DEFENDANTS

20.    The Town of Middleborough (the "Town") is a body corporate, with the authority to sue and be sued. G.L. c. 40 §§ 1, 2.

21.    The Middleborough School Committee (the "School Committee") is the governing board with final policymaking authority over the Town's public school system, Middleborough Public Schools (the "District"). Mass. Gen. Laws ch. 71 § 37.

22.    The School Committee is charged, *inter alia*, with the power to select and to terminate the superintendent and to establish educational goals and policies for the schools in the District consistent with the requirements of law and statewide goals and standards established by the board of education. *Id.*

23.    The School Committee is responsible for the enactment, enforcement, and existence of policies and practices related to student expression, including the Speech Policy challenged herein.

24.    The School Committee is required to appoint and employ a superintendent to manage the District in a fashion consistent with state law and the policy determinations of the School Committee. Mass. Gen. Laws ch. 71 § 59; Middleborough School Committee Policy CB. A true and correct copy of SCSD Policy CB is attached as Exhibit A.

25.   The superintendent "has responsibility for carrying out, through procedures, the policies established by the School Committee." Middleborough School Committee Policy CH. A true and correct copy of SCSD Policy CH is attached as Exhibit B.

26.   The School Committee has designated Defendant and Superintendent Carolyn J. Lyons as the individual responsible for implementing committee policy in the daily operations of the District.

27.   The School Committee retains broad supervisory authority over Defendant Superintendent Lyons, the assistant superintendents, the principal of each school in the District, and all other staff for the District.

28.   The District and the School Committee were and are aware of the enforcement of certain District policies, including the Speech Policy, and their application to student speech.

29.   The School Committee were and are aware that District officials enforced the Speech Policy against L.M. when they prohibited L.M. from wearing the shirt with the message "There are only two genders" on it.

30.   School officials were acting pursuant to District policy in promulgating and enforcing the Speech Policy against L.M.

31.   The School Committee has ratified and implemented the Speech Policy adopted and enforced by Defendants at NMS. The School Committee is ultimately responsible for its implementation and enforcement by District employees.

32.   Defendant Lyons, as a policy maker, is responsible for the enactment, implementation, and enforcement of the District policies and their application to student speech.

33.   Defendant Lyons is responsible for the administration, interpretation, and oversight of certain District policies, including the Speech Policy, and their application to student speech.

34.    Defendant Lyons enforced the Speech Policy against L.M. when she approved Defendant Tucker's decision to forbid L.M. from wearing the shirt.

35.    Defendant Lyons is sued in her official capacity.

36.    Defendant Heather Tucker is, and was at all times relevant to this Complaint, the acting Principal of the Nichols Middle School, a public school organized pursuant to the laws of Massachusetts.

37.    Defendant Tucker is responsible for the enforcement of certain District policies, including the Speech Policy, and their application to student speech.

38.    Defendant Tucker twice enforced the Speech Policy against L.M. when she prohibited L.M. from wearing the shirt with the message "There are only two genders" and the shirt with the message "There are censored genders" on it.

39.    Defendant Tucker is sued in her official capacity.

40.    All Defendants prohibited L.M. from wearing his "There are only two genders" shirt pursuant to the Speech Policy and practice challenged herein.

41.    All Defendants prohibited L.M. from wearing his "There are censored genders" shirt pursuant to the Speech Policy and practice challenged herein.

42.    All Defendants are responsible for the implementation and application of the Speech Policy and practice by school employees.

## FACTUAL ALLEGATIONS

## I.   Defendants' Speech Policy

43.    NMS is a public middle school located in Middleborough, Massachusetts.

44.    NMS is under the direction and control of the Defendants.

45.    Defendants are the official policymakers for NMS and have enacted and are responsible for the Speech Policy challenged herein and its enforcement against L.M.

46.    Defendants approved the John T. Nichols Jr. Middle School Student & Family Handbook 2022–2023 (the "Student Handbook"). A true and correct copy of the Student Handbook is attached as Exhibit C.

47.    The Student Handbook includes a section entitled "Dress Code" which incorporates Defendants' Speech Policy. Exhibit C at 45.

48.    The Speech Policy states the dress code is "governed by health, safety and appropriateness." *Id.*

49.    The Speech Policy includes the following prohibition: "Clothing must not state, imply, or depict hate speech or imagery that target groups based on race, ethnicity, gender, sexual orientation, gender identity, religious affiliation, or any other classification." *Id.* at 46.

50.    The Speech Policy also provides "[a]ny other apparel that the administration determines to be unacceptable to our community standards will not be allowed." *Id*.

51.    If "students wear something inappropriate to school, they will be asked to call their parent/guardian to request that more appropriate attire be brought to school." *Id*.

52.    "Repeated violations of the dress code will result in disciplinary action." *Id*.

53.    The Student Handbook specifies that "violation of the dress code" is a Level 1 infraction. Discipline for a Level 1 infraction ranges from warning to possible school suspension. Ex. C at 39.

54.    Under the Speech Policy, school officials can censor expression that they deem inappropriate or that they subjectively determine targets a certain group even if this expression is not materially and substantially disruptive.

8

## II.  L.M.'s Desired Expression

55.  L.M. is a twelve-year old student currently enrolled in the seventh grade at NMS.

56.  L.M. has attended school in the District since Kindergarten.

57.  L.M. is a very good student. He is on the Honor Roll.

58.  L.M. has observed Defendants and other school officials expressing messages about human identity, sex, and gender.

59.  Defendants embrace and express the idea that a person's status as "male" or "female," or something else entirely depends solely on the person's identity and has no relationship to the person's biology.

60.  Defendants embrace and express the idea that however a person identifies, that identity is "valid" and must be recognized as such by others.

61.  Defendants embrace and express the idea that there are unlimited "valid" genders.

62.  Defendants express their views on human identity, sex, and gender through their speech, curricula, and extracurricular events.

63.  In particular, Defendants designate June as "Pride Month" and have a special "PRIDE Spirit Week" in the month of June to "celebrate Pride Month!" A true and correct copy of last year's *Tiger Times Nichols Middle School* newsletter announcing last year's Pride Month is attached hereto as Exhibit D.

64.  The District itself defines "Pride" as "the promotion of the self-affirmation, dignity, equality, and increased visibility of LGBTQIA+ people as a social group." Ex. D at 3.

65.  During Pride Month, the school expresses its own view and also encourages students to engage in their own expression, but only if the students' expression supports Defendants' views on human identity, sex, and gender.

66.     For example, students are encouraged to "[w]ear a positive message of *acceptance*/love" and to "[w]ear your Pride gear to *celebrate Pride Month*." *Id.* (emphasis added).

67.     L.M. believes that there are only two sexes, male and female. Like many people, he equates the word "gender" with "sex."

68.     In fact, some of the District's own communications support the view that there are only two sexes. The Student Handbook states: "All aspects of public school education must be fully open and available to members of **both** sexes and of minority groups." Ex. C at 14 (emphasis added). The Student Handbook also states: "Sexual Harassment is defined by the Middleborough School Committee as . . . written materials or pictures derogatory to **either gender**. . ." *Id.* at 57 (emphasis added).

69.     L.M.'s sincerely held beliefs compel him to share his beliefs and views with his classmates.

70.     In L.M.'s experience in his peer group, his view of human identity, sex, and gender is subject to censure because it differs from the view promoted by authority figures in the school community, including Defendants, by popular culture, and by other students.

71.     In L.M.'s experience, many of his classmates agree with his views but are afraid to express their views because of the social consequences of expressing a view that differs from the view promoted by authority figures in the school community, including Defendants, by popular culture, and by other students.

72.     Because L.M. believes that the view promoted by authority figures in the school community, including Defendants, by popular culture, and by other students is ultimately false and harmful, L.M. wants to express his own view in the school.

73.     L.M. also wants to express his own view in the school because he has frequently observed Defendants express their own view through speech and events,

and he wants to demonstrate to his other classmates that caring, compassionate people can still hold his view in good faith.

74.    L.M. respects the right of others to express views that differ from his own. He seeks only the right to engage with the topics that are already being addressed and to express his own view on those topics, including the topic of human identity, sex, and gender.

75.    One way that L.M. desires to accomplish this goal is by wearing clothing, displaying messages, like the "There are only two genders" shirt that Defendants censored.

### III.  Censorship of L.M.'s Expression

76.    On March 21, 2023, acting on his desire to express his beliefs to his classmates, L.M. decided to wear a shirt with the message "There are only two genders."

77.    "There are only two genders" was the only message displayed on L.M.'s shirt.

78.    Pursuant to the Speech Policy challenged herein, Defendants regularly permit L.M.'s schoolmates to wear clothing and other apparel with messages on them.

79.    Almost every school day, multiple students in the District wear shirts with some sort of expressive message on them, including shirts promoting many sports teams and different types of products.

80.    Defendants express messages in schools throughout the District on myriad of topics as well, including topics related to human identity, sex, and gender. Defendants express these messages through posters, flags, and events. Below are two examples at Middleborough High School:





81.    In the picture above, the sign below the rainbow flag reads:

       Black Lives Matter
       Proud friend/ally of LGBTQ+
       Refugees & immigrants are welcome
       Love is love
       Diversity is beautiful

82.    Just as these other students wear shirts and other apparel with expressive

messages to share their beliefs and views with their classmates, and to respond to

12

Defendants' expression on the specific subject of human identity, sex, and gender, L.M. wore his "There are only two genders" shirt to do the same.

83.    While he was participating in gym, which was the first class of the day, Defendant Tucker removed L.M. from class. Defendant Tucker told L.M. that he could not wear the shirt because other students had complained.

84.    Defendant Tucker told L.M. that he could either remove the shirt or if he had questions they could discuss it further in another room.

85.    L.M. indicated that he would like to discuss the situation further.

86.    Defendant Tucker then escorted L.M. to another room. The school counselor then joined the conversation.

87.    L.M. asked why he could not wear the shirt. Defendant Tucker said some students complained that it made them upset.

88.    Defendant Tucker made it clear that L.M. must remove the shirt or he could not return to class.

89.    L.M. politely explained that he could not remove the shirt in good conscience.

90.    Defendant Tucker then called L.M.'s father and explained that L.M. could not return to class if he did not remove the shirt.

91.    As a result, L.M.'s father picked him up from school and L.M. was forced to miss classes the rest of the day.

92.    During the time L.M. wore his shirt on March 21, its message caused no disruptions.

93.    During the time L.M. wore his shirt on March 21, no student became visibly upset or distracted by its message.

94.    During the time L.M. wore his shirt on March 21, no student objected to its message.

95.   On April 1, L.M.'s father sent an email to Defendant Lyons. The email

stated in part:

> Would you please help me understand why my son was removed
> from class and ultimately missed out on a day of class instruction.
> There was nothing about [L.M.'s] shirt that was directed to any
> particular person. It simply stated his view on a subject that has
> become a political hot topic. It is a topic that is being discussed in
> social media, schools, and churches all across our country. My son
> is now asking me why he is not allowed to express his own political
> statement when he sees others doing the same every day in their
> choice of clothes, pins, posters, and speech.

A true and correct copy of the email is attached hereto as Exhibit E.

96.   On April 4, Defendant Lyons replied to the email. Defendant Lyons

confirmed that she supported Defendant Tucker's decision to force L.M. to remove

the shirt or leave school.

> As for how Mrs. Tucker enforced the dress code, I am in support of
> her position. The dress code does clearly articulate the expectation
> that the dress code will be governed by health, safety, and
> appropriateness. That appropriateness comes at the discretion of
> the building administration. The content of [L.M.'s] shirt targeted
> students of a protected class; namely in the area of gender
> identity. While I cannot share the numbers or names of students and
> staff that complained about this shirt, I can assure you that there were
> several students and several staff who did.

*Id.*

97.   On April 13, L.M. attended the School Committee's public meeting. During

the public comment period, L.M. informed the School Committee about the incident.

He explained:

> What did my shirt say? Five simple words: "There are only two
> genders." Nothing harmful. Nothing threatening. Just a statement I
> believe to be a fact. I have been told that my shirt was targeting a
> protected class. Who is this protected class? Are their feelings more
> important than my rights? I don't complain when I see "pride flags"
> and "diversity posters" hung throughout the school. Do you know why?

14

> Because others have a right to their beliefs just as I do. Not one person,
> staff, or student told me that they were bothered by what I was
> wearing. Actually, just the opposite. Several kids told me that they
> supported my actions and that they wanted one too.

*There Are Only Two Genders*, YouTube, (May 3, 2023) bit.ly/3pD6TN8 (last accessed

May 16, 2023) at 9:40-12:20.

98.    On April 27, L.M.'s attorney sent a letter to Defendant Lyons informing

her that Defendants' censorship of L.M. violated his First Amendment rights. A

true and correct copy of the letter is attached hereto as Exhibit F.

99.    The letter informed Defendant Lyons that L.M. intended to wear the same

shirt again on Friday, May 5 and requested that Defendant Lyons confirm in

writing that the District would allow him to wear the shirt.

100.    On May 4, Defendants' counsel responded with a letter unequivocally

stating that the District "has, and will continue to, prohibit the wearing of a t-shirt

by L.M. or anyone else which is likely to be considered discriminatory, harassing

and/or bullying to others including those who are gender nonconforming by

suggesting that their sexual orientation, gender identity or expression does not

exist or is invalid." A true and correct copy of the letter is attached hereto as Exhibit

G.

101.    As Defendants interpret their Speech Policy, some viewpoints on the topic

of "gender identity or expression" are permitted while some viewpoints on the same

topic are prohibited. In particular, speech expressing the viewpoint that there are

only two genders is prohibited, while speech expressing the viewpoint that gender is

fluid and is on a spectrum is permitted.

102.    The letter further asserts Massachusetts law prohibits communications

"that may reasonably be considered intimidating, hostile, offensive or unwelcome

based on race, color, religion, national origin, sex, sexual orientation, gender

identity or any other status protected by law and/or may otherwise be reasonably likely to lead to a disruption of its operations." *Id*.

103.    As a result of Defendants' stated position, L.M. did not wear his shirt to school on May 5 with the message "There are only two genders."

104.    On May 5, in protest of Defendants' censorship of his message, L.M. wore a shirt with the message "There are censored genders." This is a picture of the shirt that L.M. wore:



105.    As soon as L.M. arrived at his first class, his teacher instructed him to go to Defendant Tucker's office.

106.    On the way to the office, L.M. removed the shirt.

107.    When he arrived at her office, Defendant Tucker asked L.M. if she could trust him not to put the shirt back on with the message "There are censored genders."  L.M. agreed not to put the shirt back on.

108.    L.M. complied with Defendant Tucker's order to remove the shirt because he did not want to miss another day of school.

109.    L.M. was forced to wear another shirt for the remainder of the day.

110.    During the time L.M. wore his shirt on May 5, its message caused no disruptions.

111.    During the time L.M. wore his shirt on May 5, no student became visibly upset or distracted by its message.

112.    During the time L.M. wore his shirt on May 5, no student objected to its message.

113.    As a result of Defendants' policies and actions, L.M. has not worn either the "There are only two genders" shirt or the "There are censored genders" shirt since May 5 even though he desires to do so.

## IV.  Continuing Impact of Defendants' Policies on L.M.

114.    Defendants' Speech Policy challenged herein, and which school officials enforced in censoring L.M.'s shirts, remain in place and serve to chill and deter L.M.'s (and other students') expression.

115.    Immediately and in the future, L.M. desires to wear his "There are only two genders" shirts, and shirts with similar messages, as a means of sharing his beliefs with his fellow classmates.

116.    Since one of L.M.'s purposes in wearing the "There are only two genders" shirts was to stand against the pressure that he perceived from the school community, including Defendants, and his peers *not* to express this view, the censorship Defendants imposed upon him is especially harmful, and L.M.'s need to correct this censorship is vital to his ability to spread his message.

117.    Because part of L.M.'s purpose in speaking was to stand against the pressure he perceived *not* to express his message, Defendants' decision to censor his second shirt, which itself expresses a message about Defendants' active censorship of messages about gender identity (rather than a message about gender identity itself), L.M.'s need to correct this second act of censorship is vital to his ability to spread his message.

17

118.   L.M. is refraining from wearing his "There are only two genders" shirt or other shirts bearing similar messages, however, out of fear that he will again be found to have violated the Defendants' Speech Policy challenged herein, and thus be subject to punishment, including detention and possible suspension.

119.   L.M.'s fear of punishment severely limits his constitutionally-protected expression at NMS.

LEGAL ALLEGATIONS

120.   Students do not shed their constitutional rights at the schoolhouse gate.

121.   All of the acts of the Defendants, their board members, officers, agents, employees, and servants were executed and are continuing to be executed by Defendants under the color and pretense of the policies, statutes, ordinances, regulations, customs, and usages of the State of Massachusetts.

122.   L.M. is suffering irreparable harm from the conduct of the Defendants.

123.   L.M. has no adequate or speedy remedy at law to correct or redress the deprivation of his rights by the Defendants.

124.   Unless the Defendants' Speech Policy and practice challenged herein are enjoined, L.M. will continue to suffer irreparable injury.

<strong>FIRST CAUSE OF ACTION</strong><br>
<strong>First Amendment: Freedom of Speech</strong><br>
<strong>(42 U.S.C. § 1983)</strong>

125.   Plaintiff re-alleges and incorporates herein, as though fully set forth, Paragraphs 1 through 124 of this Complaint.

126.   The First Amendment's Freedom of Speech Clause, incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution, prohibits censorship of protected expression.

127.   Non-disruptive, private student expression is protected by the First Amendment.

128.   L.M.'s speech is protected speech under the First Amendment.

18

129.    L.M.'s expression—wearing a shirt with the "There are only two genders" and "There are censored genders" message—did not and does not materially and substantially interfere with the orderly conduct of educational activity at NMS.

130.    The messages L.M. expressed with his apparel are exclusively L.M.'s private expression and are not school-sponsored speech.

131.    But pursuant to their Speech Policy and practice, Defendants have singled out L.M.'s expression and prevented him from displaying his messages on his shirt at NMS.

132.    Viewpoint-based restrictions, whether in a public or nonpublic forum, are unconstitutional.

133.    Content-based restrictions on speech in a public forum are presumptively unconstitutional and are subject to strict scrutiny.

134.    Time, place, and manner restrictions on speech must be content-neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.

135.    Defendants' censorship of L.M.'s shirts while permitting shirts and other apparel with different messages on related topics is viewpoint discrimination, which is unconstitutional in any type of forum.

136.    Defendants expressly interpret their policy in a viewpoint discriminatory manner, permitting expression of the viewpoint that gender is fluid, is on a spectrum, or there are more than two genders, while prohibiting any expression of a contrary view.

137.    Defendants expressly interpret their policy to prohibit the expression of certain viewpoints without regard to whether the expression materially or substantially disrupts the school, its operations, or its environment, or the achievement of any legitimate pedagogical objective.

138.    Defendants' unequal treatment of L.M.'s expression is also a content-based restriction of his speech in an otherwise open forum.

139.    Pursuant to their Speech Policy and practice, Defendants allow students at NMS to wear clothing and other apparel with a wide variety of expressive messages during school, including shirts promoting many sports teams and different types of products.

140.    Defendants' Speech Policy and practice also impose an unconstitutional heckler's veto because they permit the restriction of protected student expression merely because school officials deem a student's expression "offensive" to others.

141.    Prior restraints on speech may not delegate overly broad discretion to government decision-makers, may not allow for content-based restrictions, must further a compelling government interest, must be narrowly tailored, and must be the least restrictive means available.

142.    Defendants' Speech Policy and practice impose an unconstitutional prior restraint because they vest school officials with unbridled discretion to permit or deny student expression subject to no standards or guidelines, thereby permitting content- and viewpoint-based enforcement of the policies.

143.    Defendants' Speech Policy and practice give unbridled discretion to school officials by permitting them to forbid messages on clothing they deem to be "hate speech," "that target groups based on . . . sexual orientation or gender identity," or are otherwise "unacceptable" to the District's "community standards."

144.    Defendants' Speech Policy and practice are overbroad because they sweep within their ambit protected First Amendment expression.

145.    Defendants' Speech Policy and practice are overbroad because they restrict student speech that does not and will not materially and substantially disrupt the educational process.

20

146.    The overbreadth of the Defendants' Speech Policy and practice chill the speech of students who might seek to engage in private expression through the wearing of messages on their clothing.

147.    Defendants have no compelling or legitimate reason that would justify their censorship of the message that L.M. seeks to express.

148.    Defendants' Speech Policy and practice are not the least restrictive means of achieving any compelling interest they may allege.

149.    Defendants' Speech Policy and practice are not reasonably related to any legitimate pedagogical concerns.

150.    Censoring students' protected speech per se is not and cannot be a legitimate pedagogical concern.

151.    Defendants' Speech Policy prohibiting "hate speech" or "unacceptable" messages on clothing, both facially and as-applied, violates the Free Speech Clause of the First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment.

## SECOND CAUSE OF ACTION
### Fourteenth Amendment: Due Process
### (42 U.S.C. § 1983)

152.    Plaintiff re-alleges and incorporates herein, as though fully set forth, Paragraphs 1 through 124 of this Complaint.

153.    The Due Process Clause of the Fourteenth Amendment prohibits the government from censoring speech pursuant to vague standards that grant enforcement officials unbridled discretion.

154.    The arbitrary determination by school officials of what is and is not "hate speech," what speech "targets" a specific group, or what speech is "unacceptable to community standards" violates this norm.

155.   Students of common intelligence must guess as to whether their expression will be deemed "hate speech," or "target[s]" a specific group, or "unacceptable" and thus subject to censorship and punishment.

156.   Defendants' Speech Policy and practice of prohibiting "hate speech," or speech that "target[s]" a specific group, or "unacceptable" messages on clothing are vague and allow for unbridled discretion in determining which student speech is permissible.

157.   Defendants' Speech Policy and practice allow school officials to act with unbridled discretion when deciding whether student expression is "hate speech," "unacceptable to community standards," or "target[s]" a specific group.

158.   The discretion given to school officials in Defendants' Speech Policy and practice leaves censorship of student speech to the whim of school officials.

159.   Defendants' Speech Policy prohibiting messages on clothing that are "hate speech," "unacceptable to our community standards," or that "target" a specific group, both facially and as-applied, violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants, and provide Plaintiff with the following relief:

A. That this Court issue a Preliminary and Permanent Injunction enjoining Defendants, their officials, agents, employees, and all persons in active concert or participation with them, from enforcing Defendants' Speech Policy challenged herein both facially and as-applied so as to prohibit L.M. from wearing a shirt with the message "There are only two genders" or similar messages at NMS;

B. That this Court render a Declaratory Judgment, declaring Defendants' Speech Policy prohibiting messages that are deemed to be "hate speech," "unacceptable to community standards," or that "target" specific groups on clothing unconstitutional, facially and as-applied to L.M.'s speech;

C. That this Court adjudge, decree, and declare the rights and other legal relations of the parties to the subject matter here in controversy in order that such declarations shall have the force and effect of final judgment;

D. That this Court retain jurisdiction of this matter for the purpose of enforcing this Court's order;

E. That this Court grant an award of actual and nominal damages against Defendants Town of Middleborough and Middleborough School Committee to Plaintiff in an amount this Court deems appropriate;

F. That this Court grant to Plaintiff reasonable costs and expenses of this action, including attorneys' fees in accordance with 42 U.S.C. § 1988;

G. That this Court grant the requested injunctive relief without a condition of bond or other security being required of Plaintiff; and

H. That this Court grant such other and further relief as this Court deems just and proper.

Respectfully submitted this 19th day of May, 2023.

*s/ Andrew Beckwith*
_____
Andrew Beckwith
MA Bar No. 657747
MASSACHUSETTS FAMILY
INSTITUTE
401 Edgewater Place, Suite 580
Wakefield, MA 01880
Telephone:  (781) 569-0400
andrew@mafamily.org

Tyson C. Langhofer*
VA Bar No. 95204
P. Logan Spena*
VA Bar No. 98407
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
Telephone:  (480) 444-0020
tlanghofer@ADFlegal.org
lspena@ADFlegal.org

David A. Cortman*
GA Bar No. 188810
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
dcortman@ADFlegal.org

*Attorneys for Plaintiff*
*\*Pro Hac Vice application forthcoming.*

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury for all issues so triable.

*s/ Andrew Beckwith*
_____
Andrew Beckwith
*Attorney for Plaintiff*

## DECLARATION UNDER PENALTY OF PERJURY

I, Christopher Morrison, a citizen of the United States and a resident of the State of Massachusetts, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge. Executed this _16th_ day of May, 2023.

Christopher Morrison

## DECLARATION UNDER PENALTY OF PERJURY

I, Susan Morrison, a citizen of the United States and a resident of the State of Massachusetts, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed this *16* day of May, 2023.

Susan Morrison