# EXHIBIT F



April 27, 2023

Mrs. Carolyn J. Lyons, Superintendent of Schools
Middleborough Public Schools
30 Forest Street
Middleborough, MA 02346

**Via Email:** ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

**Re:**     ▇▇▇▇▇▇▇▇▇▇'s **Right to Free Speech**

Dear Mrs. Lyons:

    I am writing on behalf of Mr. ▇▇▇▇▇▇▇▇▇▇, a 7th-grade student at Nichols Middle School (NMS). Massachusetts Family Institute represents ▇▇▇▇, through his father, Chris Morrison, and stepmother, Susan Morrison, regarding a recent incident involving ▇▇▇▇ at NMS.

## Factual Background

    On Tuesday, March 21, 2023, ▇▇▇▇ wore a t-shirt to school that simply stated, "There are only two genders." ▇▇▇▇ had asked his parents to buy him this shirt because he opposes the idea that there are many (even infinite) genders, which he sees as radical and untrue. He wore the shirt because he wanted to make a statement based on his deeply-held personal and political beliefs regarding the unchangeable nature of gender as a binary of male and female.

    Unfortunately, ▇▇▇▇ was not allowed to express his beliefs. Instead, acting principal Heather Tucker removed him from gym class and met with him and a school counselor in a side room. During that meeting, she told ▇▇▇▇ that his shirt was inappropriate because it made other students upset. She asked him to change his shirt in order to return to class, but ▇▇▇▇ expressed that he could not do so in good conscience. Having reached this impasse, ▇▇▇▇ father and stepmother came and picked him up. ▇▇▇▇ missed the rest of his classes that day.

    Following this incident, ▇▇▇▇'s father communicated with you and inquired about the school's justification for removing ▇▇▇▇ from class and demanding that he change shirts. You replied that ▇▇▇▇ shirt violated the school's dress code, specifically citing the provision which states, "Clothing must not state, imply, or depict hate speech or imagery that target groups based on race, ethnicity, gender, sexual

orientation, gender identity, religious affiliation, or any other classification." You stated that "several" students and staff complained about the shirt but did not cite a particular number. You also did not give any examples of disruptions or potential disruptions that the shirt had caused or was likely to cause.

In sum, on the basis of a few complaints by unnamed students and staff, NMS censored ▮▮▮'s expression of political speech on a topic of ongoing public debate. In doing so, it is clear that NMS violated ▮▮▮'s right to free speech under the First Amendment to the United States Constitution and Article 16 of the Massachusetts Declaration of Rights.

### NMS Violated ▮▮▮'s Free Speech Rights by Censoring His Shirt

Public school students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). Generally, unless a school can prove that a student's speech would "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school" or "impinge upon the rights of other students," it may not censor that speech. *Id.* at 509.

In the celebrated case of *Tinker v. Des Moines,* as with ▮▮▮ here, students were forbidden from wearing certain apparel to silently express a political and philosophical message that was unpopular with their school's administration. *Id.* at 504. In that case, the attire at issue were black armbands worn to protest the Vietnam War. *Id.* Because there was no evidence that the armbands caused disruption to school operations, other than some "hostile remarks" by a few students, the Court found that the Des Moines school district had violated the protesting students' rights to make their opinions known. *Id.* at 508-09.

*Tinker* also made clear that "in our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." *Id.* at 508. School officials must show that any restriction on student speech "was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." *Id.* at 509.

The fact that "discomfort or unpleasantness" arises on account of some students' personal experiences or characteristics does not give a school any more right to censor speech. In a case with strikingly similar facts to those at issue here, a federal court held that certain students' discomfort with a classmate's shirt that read "Abortion is Homicide" was not enough to justify censoring the shirt. *K.D. v. Fillmore Cent. Sch. Dist.*, 2005 U.S. Dist. LEXIS 33871 (W.D.N.Y. 2005). In that case, the school district argued that the shirt caused a disruption because three female students complained about it and because it could be construed as a direct, personal attack on students who had themselves had abortions. *Id.* at *14; 20. The court rejected both of these arguments. *Id.* It first emphasized that the student's expression was passive in nature; wearing the shirt did not require the student to accost, confront, or debate other students, and if other students wanted to avoid viewing the message, they could choose not to look at the shirt. *Id.* at *19. The court then stressed that the shirt also did not infringe on the rights of other students, holding that "<u>students do not have the right not to be 'upset' when confronted with a viewpoint with which they disagree.</u>" *Id.* at *20 (emphasis added).

Other courts have come to the same conclusions in similar cases. *See, e.g., Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. #204,* 523 F.3d 668, 676 (finding it "highly speculative that allowing the plaintiff to wear a T-shirt that says 'Be Happy, Not Gay' would have even a slight tendency to provoke [harassment

of gay students], or for that matter to poison the educational atmosphere"); *Pyle by & Through Pyle v. South Hadley Sch. Comm.,* 861 F. Supp. 157, 159 (D. Mass. 1994) (upholding student's right to wear sexually suggestive t-shirt and stating that "The First Amendment does not permit official repression or homogenization of ideas […] even when the expression of these ideas may result in hurt feelings or a sense of being harassed), *vacated on other grounds,* 55 F.3d 20; *C.H. v. Bridgeton Bd. of Educ.*, 2010 U.S. Dist. LEXIS 40038 (D. N.J. 2010) (holding that student had right to wear anti-abortion armband and distribute flyers in school because school presented no evidence that disruption was likely). Indeed, courts have even upheld students' rights to wear "Hitler Youth" buttons and Confederate flag apparel in the absence of a specific showing of substantial disruption. *See DePinto v. Bayonne Board of Education,* 514 F. Supp. 2d 633 (D.N.J. 2007); *Bragg v. Swanson*, 371 F. Supp. 2d 814 (S.D. W. Va. 2005). If these highly controversial statements have been protected, the simple statement of fact on ▮ shirt must be allowed as well. In all of these cases, the operative principle is the same: the point of safeguarding the freedom of speech is not to protect the speech that those in power like, but the speech that they hate. *See United States v. Schwimmer,* 279 U.S. 644, 655 (1929) (Holmes, J., dissenting).

Here, there is no doubt that the NMS administration and "several" students and staff did not like what ▮ had to say. Indeed, NMS has made its position on gender ideology clear through the use of banners, flags, and curricula. Because ▮ dissented from this orthodoxy, he was censored. But NMS has not pointed to *any* evidence of substantial disruption that took place because of ▮'s shirt that would justify such an action; as the cases above make clear, apprehension that some students may be offended, even that they may feel personally attacked, is not enough. Nor is there any evidence that other students' rights were infringed – how could they have been, when ▮'s expression was passive and could easily be ignored or avoided? Complaints by other students and staff that ▮ shirt made them feel upset or uncomfortable simply do not come close to the level of disruption required to justify censoring speech.

Finally, it is important to note what ▮ shirt did *not* say. ▮ shirt did not threaten students or staff who identify as transgender. It did not express ill will, disdain, or judgment toward them. Indeed, the shirt did not mention transgender-identifying people at all. It merely stated something that is, from ▮ perspective, a fact: there are only two genders. While this might be a controversial opinion to some, how anyone could construe it as "hate speech" toward transgender-identifying people is baffling. Students who disagree with ▮ opinion should certainly be allowed to express their opposing opinions, but no one should be able to simply shut down speech that makes them upset. By forbidding ▮ from wearing this shirt, NMS intended to silence his dissenting viewpoint and thereby violated his free speech rights under the state and federal constitutions.

### The NMS Dress Code's "Hate Speech" Provision is Facially Unconstitutional

The second problem with NMS's censorship of ▮ is that the dress code policy it used to justify doing so is facially unconstitutional. The Federal District Court for the District of Massachusetts has already spoken to this exact issue in *Pyle v. South Hadley Sch. Comm.,* 861 F. Supp. at 157. While that case was ultimately vacated on other grounds, the law undergirding the district court's decision remains the same and would lead to exactly the same outcome in this case. *See id.* In *Pyle,* South Hadley High School's dress code forbade clothing that was "directed toward or intended to harass, threaten, intimidate, or demean an individual or group of individuals, because of sex, color, race, religion, handicap, national origin, or sexual orientation." *Id.* at 162. When the plaintiff students wore sexually suggestive t-shirts, they were disciplined in part under this provision of the dress code. *Id.* at 158-59;

161. The court held that this provision was facially unconstitutional because it discriminated based on viewpoint: speech expressing positive opinions based on race, sex, religion, etc., were allowed, but speech expressing negative opinions on those topics was not. *Id.* at 171. The court found that it was "impossible to avoid the conclusion that the 'harassment' provision of the South Hadley dress code is aimed directly at the content of speech, not at its potential for disruption or its vulgarity." *Id.* It gave the example of two t-shirts, one that supported homosexuality and one that opposed it; the court stated that by censoring only the shirt that opposed homosexuality, the school would be "picking and choosing" between favored and disfavored speech, which would clearly violate the First Amendment. *See id.* at 172-73. After drawing on caselaw from the Supreme Court and multiple other federal circuit and district courts, the Massachusetts Federal District Court concluded that "South Hadley's desire to teach students tolerance of persons with a different religion, race, gender, or sexual orientation is certainly admirable. However, the school cannot silence speech that runs contrary to this laudable goal." *Id.* at 172.

It should be clear that the "hate speech" provision of NMS's dress code is similarly facially unconstitutional and would be struck down if challenged in federal court. By allowing speech that supports gender identity ideology, but forbidding speech that opposes it, NMS is unconstitutionally "picking and choosing" speech that it favors and disfavors. ▓▓▓ shirt did not in fact come close to expressing "hate speech" toward transgender-identifying students, but even had it done so, it could not be prohibited absent evidence of a material and substantial disruption to school operations. *Id.* at 173.

**Conclusion**

▓▓▓ intends to wear his shirt again on Friday, May 5th. Now that NMS is on notice that hindering him from wearing the shirt is a violation of his constitutional rights, we trust that it will not interfere with ▓▓▓ doing so again. If it does, it may be necessary to take legal action against the school district. Please confirm in writing at your earliest opportunity that ▓▓▓ will be allowed to wear the shirt.

Thank you for your time and attention to this matter. Please forward this letter to your school district's legal counsel. I look forward to your prompt response.

Sincerely,

*Samuel Whiting*

Samuel J. Whiting, Esq.
Staff Attorney
Massachusetts Family Institute
sam@mafamily.org
781-569-0400


CC:   Middleborough School Committee
      Andrew Beckwith, Esq.