# **EXHIBIT D**

5/24/23, 2:03 AM     Guidance for MA Public Schools Creating a Safe and Supportive School Environment - Student and Family Support

Case 1:23-cv-11111-IT    Document 36-4    Filed 05/31/23    Page 2 of 9



MASSACHUSETTS
Department of Elementary
and Secondary Education

## Student and Family Support (SFS)

# Guidance for Massachusetts Public Schools Creating a Safe and Supportive School Environment

## Nondiscrimination on the Basis of Gender Identity

*An Act Relative to Gender Identity* (Chapter 199 of the Acts of 2011),[1] which became effective on July 1, 2012, amended several Massachusetts statutes prohibiting discrimination on the basis of specified categories, to include discrimination on the basis of gender identity. Among the statutes amended is G.L. c. 76, § 5, prohibiting discrimination on the basis of gender identity against students who enroll in or attend the public schools. G.L. c. 76, §5 now reads as follows:

> **Every person shall have a right to attend the public schools of the town where he actually resides, subject to the following section. No school committee is required to enroll a person who does not actually reside in the town unless said enrollment is authorized by law or by the school committee. Any person who violates or assists in the violation of this provision may be required to remit full restitution to the town of the improperly-attended public schools. No person shall be excluded from or discriminated against in admission to a public school of any town, or in obtaining the advantages, privileges and courses of study of such public school on account of race, color, sex, *gender identity*, religion, national origin or sexual orientation.** (Emphasis added)

In June 2012, the Massachusetts Board of Elementary and Secondary Education (Board) adopted revised Access to Equal Education Opportunity Regulations, 603 CMR 26.00, and Charter School Regulations, 603 CMR 1.00, to reflect the broadened student anti-discrimination provision in G.L. c. 76, §5. The Board also directed the Department of Elementary and Secondary Education (Department) to provide guidance to school districts to assist in implementing the gender identity provision.

All students need a safe and supportive school environment to progress academically and developmentally. Administrators, faculty, staff, and students each play an important part in creating and sustaining that environment. This guidance is intended to help school and district administrators take steps to create a culture in which transgender and gender nonconforming students feel safe, supported, and fully included, and to meet each school's obligation to provide equal educational opportunities for all students, in compliance with G.L. c. 76, §5 and the state regulations. The guidance sets out general principles based on the law, and addresses common issues regarding transgender and gender nonconforming students. It offers case studies based on experiences of schools and students in Massachusetts, and reflects the need to consider issues on a case-by-case basis. The list of issues is not exhaustive, and the examples are intended to be illustrative, not prescriptive.

In preparing this guidance, the Department reviewed policies and guidance from several states, organizations, and athletic associations and consulted with the field. We appreciate the input we received from school and district administrators, advocacy groups, parents, students, and other interested constituents.

## Definitions

Understanding the terminology associated with gender identity is important to providing a safe and supportive school environment for students whose rights are protected under the law. The following terms appear in this document and are defined to assist in understanding the guidance presented. Although these are the most commonly used terms, students may prefer other terms to describe their gender identity, appearance, or behavior. The term "gender identity" is specifically defined in the Mass. General Laws, as amended by *An Act Relative to Gender Identity* (the gender identity law).

- **Gender expression**: the manner in which a person represents or expresses gender to others, often through behavior, clothing, hairstyles, activities, voice, or mannerisms.

- **Gender identity**: as defined in part at G.L. c. 4, § 7, is "a person's gender-related identity, appearance or behavior, whether or not that gender-related identity, appearance or behavior is different from that traditionally associated with the person's physiology or assigned sex at birth ..."

- **Gender nonconforming**: a term used to describe people whose gender expression differs from stereotypic expectations. The terms "gender variant" or "gender atypical" are also used.

- **Transgender**: an umbrella term used to describe a person whose gender identity or gender expression is different from that traditionally associated with the assigned sex at birth.

## The Law

The gender identity law amended G.L. c. 76, § 5,[2] to establish that no person shall be excluded from or discriminated against in admission to a public school of any town, or in obtaining the advantages, privileges and courses of study of such public school on account of *gender identity*, among other characteristics. The amended Access to Equal Educational Opportunity regulations, 603 CMR 26.00, and the non-discrimination provision of the Charter School regulations, 603 CMR 1.00, require schools to establish policies and procedures, provide training, and implement and monitor practices to ensure that obstacles to equal access to school programs are removed for all students, including transgender and gender nonconforming students.

All districts and schools should review existing policies, handbooks, and other written materials to ensure that they are updated to reflect the new law. At a minimum, this means including the category of "gender identity" within the identification of legally protected characteristics. For example:

> The [ ] Public Schools strives to provide a safe, respectful, and supportive learning environment in which all students can thrive and succeed in its schools. The [ ] Public Schools prohibits discrimination on the basis of race, color, sex, gender identity, religion, national origin, or sexual orientation and ensures that all students have equal rights of access and equal enjoyment of the opportunities, advantages, privileges, and courses of study.

The gender identity law reflects the reality that transgender and gender nonconforming students are enrolled in Massachusetts public schools. These students, because of widespread misunderstanding and lack of knowledge about their lives, are at a higher risk for peer ostracism, victimization, and bullying. The 2011 National School Climate Survey by the Gay, Lesbian & Straight Education Network (GLSEN), found that 75.4% of transgender students had been verbally harassed in the previous year, 32.1% had been physically harassed, and 16.8% had been physically assaulted. Educators play an essential role in advocating for the well-being of these students and creating a school culture that supports them.

## Understanding Gender Identity

The gender identity law defines "gender identity" to mean "a person's gender-related identity, appearance or behavior, whether or not that gender-related identity, appearance or behavior is different from that traditionally associated with the person's physiology or assigned sex at birth."[3] The law also states that "[g]ender-related identity may be shown by providing evidence including, but not limited to, medical history, care or treatment of the gender-related identity, consistent and uniform assertion of the gender-related identity or any other evidence that the gender-related identity is sincerely held as part of a person's core identity; provided, however, that gender-related identity shall not be asserted for any improper purpose."[4]

Transgender youth are those whose assigned birth sex does not match their internalized sense of their gender (their "gender-related identity"), and gender nonconforming youth are those whose gender-related identity does not meet the stereotypically expected norms associated with their assigned sex at birth. A transgender boy, for example, is a youth who was assigned the sex of female at birth but has a clear and persistent identity as male. A transgender girl is a youth who was assigned the sex of male at birth but has a clear and persistent identity as female. Gender nonconforming youth range in the ways in which they identify as male, female, some combination of both, or neither.

The responsibility for determining a student's gender identity rests with the student or, in the case of young students not yet able to advocate for themselves, with the parent.[5] One's gender identity is an innate, largely inflexible characteristic of each individual's personality that is generally established by age

Guidance for MA Public Schools Creating a Safe and Supportive School Environment for Transgender and Gender...

four, although the age at which individuals come to understand and express their gender identity may vary based on each person's social and familial social development.[6] As a result, the person best situated to determine a student's gender identity is that student himself or herself.

> *In one Massachusetts town, the parents of a pre-school-age biologically female child noted throughout the child's early years that their child identified as a boy. For as long as the parents could remember, the child preferred to play with boys rather than girls, wanted a short haircut, rejected wearing any clothing that the child identified as "something a girl would wear," and ignored anyone who called him by his stereotypically feminine name. When it was time for the child to enter kindergarten, the child said to his parents, "You have to tell them when I go to kindergarten that I'm a boy."*

Consistent with the statutory standard, a school should accept a student's assertion of his or her gender identity when there is "consistent and uniform assertion of the gender-related identity, or any other evidence that the gender-related identity is sincerely held as part of a person's core identity." If a student's gender-related identity, appearance, or behavior meets this standard, the only circumstance in which a school may question a student's asserted gender identity is where school personnel have a credible basis for believing that the student's gender-related identity is being asserted for some improper purpose.

In most situations, determining a student's gender identity is simple. A student who says she is a girl and wishes to be regarded that way throughout the school day and throughout every, or almost every, other area of her life, should be respected and treated like a girl. So too with a student who says he is a boy and wishes to be regarded that way throughout the school day and throughout every, or almost every, other area of his life. Such a student should be respected and treated like a boy.

The statute does not *require* consistent and uniform assertion of gender identity as long as there is "other evidence that the gender-related identity is sincerely held as part of [the] person's core identity." Many transgender people experience discrimination, and some experience violence due to their status. Some environments may feel safe and inclusive, and others less so, challenging a person's ability to live consistently with one gender identity in all aspects of life. For example, it is possible that a biologically male student with a female gender identity who lives as a girl does not express her female gender identity all the time. In one case, such a student agreed to present as a boy when visiting relatives until the student's parents could explain the student's transgender identity to them. The fact that the student did not exclusively assert her female identity did not alter the fact that she had a female gender identity.

Confirmation of a student's asserted gender identity may include a letter from a parent, health care provider, school staff member familiar with the student (a teacher, guidance counselor, or school psychologist, among others), or other family members or friends. A letter from a social worker, doctor, nurse practitioner, or other health care provider stating that a student is being provided medical care or treatment relating to her/his gender identity is one form of confirmation of an asserted gender identity. It is not, however, the exclusive form upon which the school or student may rely. A letter from a clergy member, coach, family friend, or relative stating that the student has asked to be treated consistent with her/his asserted gender identity, or photographs at public events or family gatherings, are other potential forms of confirmation. These examples are intended to be illustrative rather than comprehensive.

> *In one Massachusetts middle school, a biologically male student explained to her guidance counselor that she was a transgender girl who expressed her female gender identity only at home. The stress associated with having to hide her female gender identity at school was having a negative impact on her mental health, as well as on her academic performance. The student and her parents asked if it would be okay if she expressed her female gender identity at school. The guidance counselor assured the student and her parents that she could do so. The fact that the student presented no documentation to support her gender identity was not a concern since the school had no reason to believe the request was based on anything other than a sincerely held belief that she had a female gender identity.*

## Gender Transition

Many, though not all, transgender youth undergo the experience of gender transition. The term "gender transition" describes the experience by which a person goes from living and identifying as one gender to living and identifying as another. For most youth, and for all young children, the experience of gender transition involves no medical intervention. Rather, most transgender youth will undergo gender transition through a process commonly referred to as "social transition," whereby they begin to live and identify as the gender consistent with their gender-related identity. Some transgender youth who are close to reaching puberty, or after commencing puberty, may complement social transition with medical intervention that may include hormone suppressants, cross-gender hormone therapy, and, for a small

5/24/23, 9:03 AM
Case 1:23-cv-11111-IT   Document 36-4   Filed 05/31/23   Page 5 of 9
Guidance for MA Public Schools Creating a Safe and Supportive School Environment - Student and Family Support

number of young people, a range of gender-confirming surgeries. The decision about whether and how to undergo gender transition is personal and depends on the unique circumstances of each individual. There is no threshold medical or mental health diagnosis or treatment requirement that any student must meet in order to have his or her gender identity recognized and respected by a school.

Some transgender and gender nonconforming students are not openly so at home for reasons such as safety concerns or lack of acceptance. School personnel should speak with the student first before discussing a student's gender nonconformity or transgender status with the student's parent or guardian. For the same reasons, school personnel should discuss with the student how the school should refer to the student, e.g., appropriate pronoun use, in written communication to the student's parent or guardian.

## Names and Pronouns

The issue of the name and pronoun to use in referring to a transgender student is one of the first that schools must resolve to create an environment in which that student feels safe and supported. Transgender students often choose to change the name assigned to them at birth to a name that is associated with their gender identity. As with most other issues involved with creating a safe and supportive environment for transgender students, the best course is to engage the student, and in the case of a younger student, the parent, with respect to name and pronoun use, and agree on a plan to initiate that name and pronoun use within the school. The plan also could include when and how this is communicated to students and their parents. In the case of a transgender student who is enrolling at a new school, it is important that the school respect the student's privacy (see the following section) and chosen name.

> In one situation where a transgender girl was entering high school, she and her parent asked the principal to inform her teachers that even though her school records indicate that her name is John, she goes by the name Jane and uses female pronouns. The school principal sent the following memorandum to the student's classroom teachers: "The student John Smith wishes to be referred to by the name Jane Smith, a name that is consistent with the student's female gender identity. Please be certain to use the student's preferred name in all contexts, as well as the corresponding pronouns. It is my expectation that students will similarly refer to the student by her chosen name and preferred pronouns. Your role modeling will help make a smooth transition for all concerned. If students do not act accordingly, you may speak to them privately after class to request that they do. Continued, repeated, and intentional misuse of names and pronouns may erode the educational environment for Jane. It should not be tolerated and can be grounds for student discipline. If you need any assistance to make sure that Jane Smith experiences a safe, nondiscriminatory classroom atmosphere, please contact me or Ms. O'Neill. - Mr. Jones, Principal."

Massachusetts' law recognizes common law name changes. An individual may adopt a name that is different from the name that appears on his or her birth certificate provided the change of name is done for an honest reason, with no fraudulent intent. Nothing more formal than usage is required.[7] Hence, when requested, schools should accurately record the student's chosen name on all records, whether or not the student, parent, or guardian provides the school with a court order formalizing a name change.

The Department has a procedure in place to update name changes and gender markers in the Student Information Management System (SIMS) upon request. The document *Assigning State Assigned Student Identifiers (SASIDs) to Massachusetts' Public School Students* guides schools through changing names and gender markers on school records.

In sum, school personnel should use the student's chosen name and pronouns appropriate to a student's gender identity, regardless of the student's assigned birth sex. For those students who have been attending a school and undergo gender transition while attending the same school, it is important to develop a plan for initiating use of the chosen name and pronouns consistent with the student's gender identity.

## Privacy, Confidentiality, and Student Records

Under state law, information about a student's assigned birth sex, name change for gender identity purposes, gender transition, medical or mental health treatment related to gender identity, or any other information of a similar nature, regardless of its form, is part of the individual's student record (*see* Massachusetts Student Records Regulations, 603 CMR 23.00), is confidential, and must be kept private and secure, except in limited circumstances. 603 CMR § 23.04.[8] One circumstance is when authorized school personnel require the information to provide administrative, teaching, counseling, or other services to the student in the performance of their official duties. For transgender students, authorized school personnel could include individuals such as the principal, school nurse, classroom teacher(s), or guidance or adjustment counselor.

5/24/23, 9:03 AM                                   Guidance for MA Public Schools Creating a Safe and Supportive School Environment - Student and Family Support

When a student new to a school is using a chosen name, the birth name is considered private information and may be disclosed only with authorization as provided under the Massachusetts Student Records Regulations. If the student has previously been known at school or in school records by his or her birth name, the principal should direct school personnel to use the student's chosen name. Every effort should be made to update student records (for example, Individualized Education Programs) with the student's chosen name and not circulate records with the student's assigned birth name. Records with the student's assigned birth name should be kept in a separate, confidential file.

*One school nurse dealt with information in the student's file by starting a new file with the student's chosen name, entered previous medical information (for example, immunizations) under the student's chosen name, and created a separate, confidential folder that contained the student's past information and birth name.*

When determining which, if any, staff or students should be informed that a student's gender identity is different from the assigned birth sex, decisions should be made in consultation with the student, or in the case of a young student, the student's parent or guardian. The key question is whether and how sharing the information will benefit the student.

*In one case, parents of a transgender male-to-female elementary school student requested that only the school principal and the school nurse be aware that the student was assigned the sex of male at birth. After a discussion with the school principal, the parents agreed that the student's teacher, the school secretary, and the district superintendent would also be informed. In this situation, the school principal kept the student's birth certificate in a separate, locked file that only the principal could access, and put a note in the student's other file saying that the principal had viewed the student's birth certificate. In another situation, where a biological male came to school after April vacation as a girl, the school principal and guidance counselor, in collaboration with the student and her parents, developed a plan for communicating information regarding the student's transition to staff, parents, and students. The plan included who was going to say what to whom, and when the communication would take place.*

Transgender and gender nonconforming students may decide to discuss and express their gender identity openly and may decide when, with whom, and how much to share private information. A student who is 14 years of age or older, or who has entered the ninth grade, may consent to disclosure of information from his or her student record. If a student is under 14 and is not yet in the ninth grade, the student's parent (alone) has the authority to decide on disclosures and other student record matters.[9]

## Gender Markers on Student Records

A gender marker is the designation on school and other records that indicates a student's gender. For most students, records that include an indication of a student's gender will reflect a student's assigned birth sex. For transgender students, however, a documented gender marker (for example, "male" or "female" on a permanent record) should reflect the student's gender identity, not the student's assigned sex. This means that if a transgender student whose gender identity is male has a school record that reflects an assigned birth sex as female, then upon request by the student or, in the case of young students not yet able to advocate for themselves, by the parent or guardian, the school should change the gender marker on the record to male.[10] Schools are advised to collect or maintain information about students' gender only when necessary.

*One school reviewed the documentation requests it sent out to families and noticed that field trip permission forms included a line to fill in indicating the student's gender. Upon consideration, the school determined that the requested information was irrelevant to the field trip activities and deleted the line with the gender marker request.*

In addition, transgender students who transition after having completed high school, may ask their previous schools to amend school records or a diploma or transcript that include the student's birth name and gender. When requested, and when satisfied with the gender identity information provided, schools should amend the student's record, including reissuing a high school diploma or transcript, to reflect the student's current name and gender.

## Restrooms, Locker Rooms, and Changing Facilities

All students are entitled to have access to restrooms, locker rooms and changing facilities that are sanitary, safe, and adequate, so they can comfortably and fully engage in their school program and activities. In meeting with the transgender student (and parent) to discuss the issues set forth in this memorandum, it is essential that the principal and student address the student's access to the restrooms, locker room and changing facility. Each situation needs to be reviewed and addressed based on the particular

5/24/23, 9:03 AM
Guidance for MA Public Schools Creating a Safe and Supportive School Environment - Student and Family Support

Case 1:23-cv-11111-IT   Document 36-4   Filed 05/31/23   Page 7 of 9

circumstances of the student and the school facilities. In all cases, the principal should be clear with the student (and parent) that the student may access the restroom, locker room, and changing facility that corresponds to the student's gender identity. While some transgender students will want that arrangement, others will not be comfortable with it. Transgender students who are uncomfortable using a sex-segregated restroom should be provided with a safe and adequate alternative, such as a single "unisex" restroom or the nurse's restroom. Similarly, some transgender students may not be comfortable undressing in the changing facilities that correspond to the student's gender identity. The following are examples of ways in which school officials have responded to these situations:

> In one elementary school, a transgender second-grader socially transitioned from female to male. The principal informed the staff: For the remainder of this year, he will use Nurse Margaret's restroom, and toward the end of the year we will make future determinations of restroom use in consultation with his family.

> In one middle school, a male-to-female transgender sixth-grader socially transitioned after spring break. For the rest of the school year, she used the nurse's restroom and the other unisex restrooms at the school. Beginning in seventh grade, she used the girls' restroom.

> In one high school, a transgender male-to-female student was given access to the female changing facility, but the student was uncomfortable using the female changing facility with other female students because there were no private changing areas within the facility. The principal examined the changing facility and determined that curtains could easily be put up along one side of a row of benches near the group lockers, providing private changing areas for any students who wished to use them. After the school put up the curtains, the student was comfortable using the changing facility.

Some students may feel uncomfortable with the same sex-segregated restroom using the same sex-segregated restroom, locker room or changing facility. This discomfort is not a reason to deny access to the transgender student. School administrators and counseling staff should work with students to address the discomfort and to foster understanding of gender identity, to create a school culture that respects and values all students.

The Department strongly recommends that districts include an appropriate number of gender-neutral restrooms commensurate with the size of the school, and at least one gender-neutral changing facility, into the design of new schools and school renovations.

School staff as well as students and their families may find the use of restrooms and changing facilities to be among the more challenging issues presented by the gender identity law, perhaps due to issues of personal privacy. As emphasized in other sections of this guidance, these issues should be resolved on a case-by-case basis, through dialogue with students and parents, and through leadership in creating safe and supportive learning environments.

## Physical Education Classes and Intramural and Interscholastic Athletic Activities

Physical education is a required course in all grades in Massachusetts' public schools, and school-based athletics are an important part of many students' lives. Most physical education classes in Massachusetts' schools are coed, so the gender identity of students should not be an issue with respect to these classes. Where there are sex-segregated classes or athletic activities, including intramural and interscholastic athletics, all students must be allowed to participate in a manner consistent with their gender identity. With respect to interscholastic athletics, the Massachusetts Interscholastic Athletic Association will rely on the gender determination made by the student's district; it will not make separate gender identity determinations.

> At one school, a transgender girl joined the girls' cheerleading squad. The school supported the student's participation on the team. When the team was going to a regional competition, however, several of the team members raised a concern that the school would be made to compete in the coed cheerleading portion of the competition rather than in the all-girls portion for which they prepared. With the permission of the student, the principal wrote a letter that she gave to the coach to take to the competition in case officials at the competition questioned the team's participation in the all-girls' portion of the event. The letter explained: "Student, Jane Smith, is a transgender girl who has been a member of the girls' team since (date). Jane has a sincerely held female gender identity and, therefore, according to state law must be permitted to participate as a girl on the girls' cheerleading team." The team participated in the regional competition without incident.

5/24/23, 9:03 AM     Guidance for MA Public Schools Creating a Safe and Supportive School Environment Nondiscrimination and Equal Support

## Other Gender-Based Activities, Rules, Policies, and Practices

As a general matter, schools should evaluate all gender-based policies, rules, and practices and maintain only those that have a clear and sound pedagogical purpose. Gender-based policies, rules, and practices can have the effect of marginalizing, stigmatizing, and excluding students, whether they are gender nonconforming or not. In some circumstances, these policies, rules, and practices may violate federal and state law. For these reasons, schools should consider alternatives to them.

Whenever students are separated by gender in school activities or are subject to an otherwise lawful gender-specific rule, policy, or practice, students must be permitted to participate in such activities or conform to such rule, policy, or practice consistent with their gender identity.

The new law on gender identity provides a good opportunity for schools to review their gender-distinct policies. For example, some schools require students to wear gender-based garb for graduation or have gender-based dress codes for prom, special events, and daily attire. Schools should eliminate gendered policies and practices such as these. For example, one school that previously had blue graduation gowns for boys and white ones for girls switched to blue gowns for all graduates. The school also changed its gender-based dress code for the National Honor Society ceremony, which had required girls to wear dresses.

Similarly, some classroom teachers may routinely include gender-based practices in the classroom. For example, some teachers may have boys and girls line up separately to leave the classroom to go to lunch, the gymnasium, restrooms, or recess, and may never have considered the educational value of non-gendered alternatives, such as having students line up in the order of their birthdays, or alphabetically by name, or in the order in which they are sitting.[11]

## Education and Training

In order to further a safe and supportive school environment for all students, schools should incorporate education and training about transgender and gender nonconforming students into their anti-bullying curriculum, student leadership trainings, and staff professional development.

As with other efforts to promote a positive school culture, it is important that student leaders and school personnel, particularly school administrators, become familiar with the gender identity law, regulations, guidance, and related resources, and that they communicate and model respect for the gender identity of all students.

Professional development for school staff could include topics on gender identity and gender nonconformity such as: the *Massachusetts Student Anti-discrimination Law and Regulations*; the DESE Guidance on *Notifying Parents When a Student Has Been Bullied Based on Sexual Orientation or Gender Identity/Expression*; key terms related to gender identity and expression; the development of gender identity; the experiences of transgender and other gender nonconforming students; risk and resilience data regarding transgender and gender nonconforming students; ways to support transgender students and to improve the school climate for gender nonconforming students; gender-neutral language and practices; and this guidance.

## Communication with School Community and Families

Superintendents and principals need to review existing policies, handbooks, and other written materials to ensure that they are updated to reflect the inclusion of *gender identity* in the student antidiscrimination law, and may wish to inform all members of the school community, including school personnel, students, and families, of the recent change to state law and its implications for school policy and practice. This could take the form of a letter that states the school's commitment to being a supportive, inclusive environment for all students, as well as the school's legal obligation to provide equal educational opportunities for all students. Such a letter might include the definitions provided at the beginning of this document and some basic information about transgender and gender nonconforming youth; a link to the school's anti-bullying and anti-harassment policies; a link to this guidance; and other resources, including individuals to contact with additional questions.[12]

## Conclusion

This guidance cannot anticipate every situation in which questions may come up in the implementation of this law, and the needs of each transgender or gender nonconforming student should be assessed and addressed on a case-by-case basis. The Department will continue to provide assistance, support, and resources as we work together to create a safe and supportive school environment for all students.

5/24/23, 9:03 AM

Case 1:23-cv-11111-IT   Document 36-4   Filed 05/31/23   Page 9 of 9
Guidance for MA Public Schools Creating a Safe and Supportive School Environment - Student and Family Support

For further information or questions about the content of this guidance, please contact the Safe Schools Program for LGBTQ Students via Safeschoolsprogram@doe.mass.edu ✉.

**Note:**

[1] The Act can be found at An Act Relative to Gender Identity

[2] The Act amends several other statutes as well, including G.L. c. 151B (governing nondiscrimination in employment), to prohibit discrimination on the basis of gender identity.

[3] Mass. Gen. Laws. Ch. 4, § 7 (2012).

[4] *Id.*

[5] When used in this document, the term "parent" refers to parent as well as legal guardian.

[6] *See* Gerald P. Mallon, "Practice with Transgendered Children," in *Social Services with Transgendered Youth* 49, 55-58 (Gerald P. Mallon ed., 1999). *See also* Stephanie Brill & Rachel Pepper, "Developmental Stages and the Transgender Child," in The *Transgender Child,* 61-64.

[7] For certain transactions, such as banking and applying for governmental benefits or licenses, it may be necessary to have a formal legal document establishing one's change of name for identity and other purposes.

[8] The federal Family Educational Rights and Privacy Act, 20 USC 1232g, also protects the privacy of education records and requires that personally identifiable information be kept secure and confidential.

[9] *See* 603 CMR §§23.01 and 23.07. If a student is from 14 through 17 years of age or has entered ninth grade, both the parent and the student may make decisions concerning the student record, or either the student or the parent acting alone may decide.

[10] As discussed in the section on Names and Pronouns, the Department's publication *Assigning State Assigned Student Identifiers (SASIDs) to Massachusetts' Public School Students* guides district staff through the process of adding or revising SIMS data.

[11] Gender and Children: A Place to Begin for Educators

[12] For example, a letter from one principal explained: *"All people have a gender identity. For most people, their gender identity matches their assigned sex at birth. For transgender people, that is not the case. Transgender girls are individuals who were assigned the male sex at birth but whose lived experience of who they are is female. Transgender boys are individuals who were assigned the female sex at birth but whose lived experience of who they are is male. As a school community, we want to provide a safe environment and support all of our students so they can achieve academically. That means making sure that our school's policies and practices are inclusive and respectful of all students, including transgender students. Toward that end, we have ' [describe steps taken to implement the law] "*

Last Updated: October 28, 2021