# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| **L.M.,** a minor by and through his father and stepmother and natural guardians, Christopher and Susan Morrison,<br><br>*Plaintiff,*<br><br>v.<br><br>**TOWN OF MIDDLEBOROUGH,** et al.,<br><br>*Defendants.* | **CASE NO.: 23-cv-11111**<br><br>**Honorable Judge Indira Talwani** |

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

i

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1
ARGUMENT ....................................................................................................................... 2
I.    DEFENDANTS ARE VIOLATING PLAINTIFF'S RIGHT TO FREE SPEECH BY ENFORCING THEIR SPEECH POLICY TO CENSOR HIS T-SHIRT PROTESTING THEIR CENSORSHIP OF SOME VIEWS ABOUT GENDER. ................................................................................................... 2
    A.    Students have a constitutional interest in protesting school policies, including policies that censor speech. ........................................................ 3
    B.    Speech protesting censorship does not lose its protection simply because a listener may be able to infer what the originally-censored message was. ............................................................................................................. 4
        1.    Defendants' theory would eliminate the ability of students to meaningfully protest acts of censorship. ................................................... 4
        2.    The possibility that a student might infer what the originally-censored message was by reading Plaintiff's "censored" t-shirt is immaterial to whether that shirt is protected. ........................................ 5
            a.    Plaintiff's original shirt was protected speech, so the possibility that a student might infer that message from his "censored" t-shirt is immaterial. ........................................................................ 5
            b.    Speech protesting censorship is protected, even where the originally-censored speech was not protected. ................................ 11
    C.    Defendants cannot meet their burden to provide facts supporting any basis for censoring Plaintiff's t-shirt protesting their censorship of some views about gender. ................................................................................. 12
        1.    Defendants cannot show any substantial disruption or facts supporting a reasonable forecast of substantial disruption. ................ 12
        2.    Defendants cannot show that Plaintiff's speech protesting Defendants' censorship involved "invasion of the rights of others." .... 13
II.    DEFENDANTS ARE VIOLATING PLAINTIFF'S RIGHT TO DUE PROCESS OF LAW BY ENFORCING THEIR SPEECH POLICY TO CENSOR HIS T-SHIRT PROTESTING THEIR CENSORSHIP OF SOME VIEWS ABOUT GENDER. .................................................................................. 13
CONCLUSION .................................................................................................................. 14
CERTIFICATE OF SERVICE ......................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Aguirre v. Tahoka Independent School District,*
  311 F. Supp. 664 (N.D. Tex. 1970) .................................................................... 3

*Bethel School District No. 403 v. Fraser,*
   478 U.S. 675 (1986)............................................................................................ 3

*Chandler v. McMinnville School District,*
  978 F. 2d 524 (9th Cir. 1992)..................................................................... 6, 7, 13

*Doe v. Hopkinton Public. Schools,*
   19 F.4th 493 (1st Cir. 2021).............................................................................. 8, 9

*Grayned v. City of Rockford,*
  408 U.S. 104 (1972).................................................................................... 13, 14

*Harper ex rel. Harper v. Poway Unified School District,*
  549 U.S. 1262 (2007)......................................................................................... 8

*Harper v. Poway Unified. School District,*
  445 F.3d 1166 (9th Cir. 2006)............................................................................ 8

*Holloman ex rel. Holloman v. Harland,*
  370 F.3d 1252 (11th Cir. 2004)..................................................................... 3, 11

*Mahanoy Area School District v. B.L. ex rel. Levy,*
  141 S. Ct. 2038 (2021)........................................................................................ 9

*Norris ex rel. A.M. v. Cape Elizabeth School District,*
  969 F.3d 12 (1st Cir. 2020) ......................................................................... passim

*Pyle ex rel. Pyle v. South Hadley School Committee,*

   861 F. Supp. 157 (D. Mass. 1994) ............................................................... 3, 4, 10, 11

*Stephenson v. Davenport Community School District,*

   110 F.3d 1303  (8th Cir. 1997) ................................................................................. 14

*Tinker v. Des Moines Independent Community School District,*

   393 U.S. 503 (1969) ........................................................................................ passim

*Westfield High Sch. L.I.F.E. Club v. City of Westfield,*

   249 F. Supp. 2d 98 (D. Mass. 2003) ........................................................................ 2

*Zamecnik v. Indian Prairie School District No. 204,*

   636 F. 3d 874 (7th Cir. 2011) ............................................................................ 5, 12

## INTRODUCTION

Defendants regularly express messages on gender and encourage students to express similar views. But their Policy is that differing views—particularly those, like Plaintiff's, that root male or female identity in sex—are not permitted. Even though Defendants' have declared Plaintiff's views invalid, along with the views of many religious students (who are also a protected class under Defendants' policies), Plaintiff does not seek to shut down this expression. What he wants is the right most other students have and that the Constitution guarantees to all: to respectfully respond to the view advanced by Defendants and some of the other students. But Defendants have banned his speech and all similar views, claiming that Plaintiff "attempted to extinguish the gender identity" of his fellow students. *See* Mem. of Law in Supp. of Def.'s Opp'n to Pl.'s Emergency Mot. for a TRO, Doc. No. 35 at 11. In addition to this being wrong as a matter of fact, *see* Decl. of L.M. at ¶ 9, they paradoxically assert that their "responsibility by law to provide a *safe and inclusive* environment for *all* students" empowers them to exclude Plaintiff's expression, *id.* at 2 (emphasis added), and that their need to protect some students from potential distress associated with hearing speech that disagrees with their view permits them brand Plaintiff's viewpoint (and the viewpoint of other members of a protected class) as "hateful." *Id.* at 14.

Not only do Defendants claim the authority to prohibit the expression of particular views about gender, they also say they can prohibit expression protesting the fact that only some views are censored. Despite the fact that opposition to the *school's* censorship does not target any other class of students (or even say anything about them one way or the other), Defendants say they can prohibit the protest because "everyone knows" what Plaintiff's original expression contained. *See* Tr. of Mot. Hr'g at 28:5, *L.M. v. Town of Middleborough*, No. 1:23-cv-11111-IT (May 31, 2023) (hereinafter "Hr'g Tr.").

1

The Constitution demands more from school officials. They cannot "prohibit the expression of an idea simply because society finds the idea itself offensive." *Texas v. Johnson*, 491 U.S. 397, 414 (1989). This rule applies even in public school, and even when the message in question implies that some other viewpoint—including a viewpoint that defines a protected class, like a religious viewpoint—is not true. *See Westfield High Sch. L.I.F.E. Club v. City of Westfield*, 249 F. Supp. 2d 98, 122 (D. Mass. 2003) ("Viewpoint-based restrictions on speech are per se unconstitutional, irrespective of the forum"). To restrict speech, whether it's speech about gender issues or speech protesting the fact that some views about gender are being censored, Defendants bear the burden of showing the restriction is justified. *See Norris ex rel. A.M. v. Cape Elizabeth Sch. Dist.*, 969 F.3d 12, 25 (1st Cir. 2020). Because they cannot meet this burden, Plaintiff is likely to succeed in showing that all of his speech, including his speech protesting Defendants' censorship, is constitutionally protected.

## ARGUMENT

Plaintiff is likely to succeed in showing that Defendants' censorship of his t-shirt protesting their censorship of some views about gender is violating his rights under the First and Fourteenth Amendments.

### I. **Defendants are violating Plaintiff's right to free speech by enforcing their Speech Policy to censor his t-shirt protesting their censorship of some views about gender.**

By permitting most students to speak about gender (depending on their view) then prohibiting Plaintiff both from expressing his own views and from expressing his opposition to their censorship of his views about gender, Defendants are violating his constitutional right to free speech. Students have an interest in protesting school policies, including those that prohibit other speech. This is true even if the originally-censored speech is not constitutionally protected (though in this case, Plaintiff's original speech is also protected). Defendants still bear the

2

burden of establishing a sufficient basis for restricting that speech under *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969), which they cannot do.

### A. Students have a constitutional interest in protesting school policies, including policies that censor speech.

Within the one year of the Supreme Court's decision in *Tinker*, a federal court held that students had a constitutional right to directing "grievances" to school officials about their "policies and practices." *Aguirre v. Tahoka Indep. Sch. Dist.*, 311 F. Supp. 664, 665 (N.D. Tex. 1970). This includes objections to restrictions on student speech. In *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1260–61, 65 (11th Cir. 2004), the court held that a student who raised his fist during the recitation of the pledge of allegiance in protest of the punishment that had been imposed on another student who refused to salute the flag engaged in protected speech. The court went even further in *Holloman*, holding not only that the protesting speech was protected, but that school officials were *independently* prohibited from shutting down the speech because of the rule against viewpoint discrimination. *See id.* at 1279–81. The court said, "even if Holloman did not have the right to express himself in the manner he did" (for example, if a jury were to conclude based on the facts presented at trial that the speech had actually caused a substantial disruption) "his rights were still violated if he was punished because Allred disagreed [with] or was offended by" the viewpoint of his speech. *Id.* at 1280.

This Court has also addressed student speech protesting claimed acts of censorship. *See Pyle ex rel. Pyle v. South Hadley Sch. Comm.*, 861 F. Supp. 157, 161–163 (D. Mass. 1994). This Court held that some t-shirts protesting the school's dress code policy (which had been implemented to censor other t-shirts) could be restricted under *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986) but emphasized that the shirts could *not* be restricted "based on the actual viewpoint expressed" or in "an effort to squelch a protest against censorship." *Pyle*, 861 F.

3

Supp. at 168. The Court also invalidated the portion of the policy that banned all clothing that "harasses, intimidates, or demeans" an individual without requiring that the clothing also cause a material disruption. *Id.* at 170 (cleaned up). *See also id.* at 171 ("while a school can bar a T-shirt that causes a material disruption, it cannot prohibit one that merely advocates a particular point of view and arouses the hostility of a person with an opposite opinion"). Thus, students have a longstanding constitutional interest in speech directed to school officials protesting school policies, including dress codes that censor speech.

### B. Speech protesting censorship does not lose its protection simply because a listener may be able to infer what the originally-censored message was.

Defendants take the position that they can prohibit Plaintiff from protesting their censorship of some messages about gender by wearing a shirt that says, "There are censored genders" because "everyone knew by that point" that "the underlying message is that there are only . . . two genders, and that those other genders that some in the school identify as don't exist." Hr'g Tr. at 28:25, 29:8–11. This claim—that speech protesting censorship can be prohibited if the audience can infer what the originally-censored speech was from the protesting speech—is incorrect for at least two reasons.

#### 1. Defendants' theory would eliminate the ability of students to meaningfully protest acts of censorship.

First, as a practical matter, Defendants' theory would permit schools to deprive students of the ability to effectively protest censorship. While some people protest censorship in the abstract, protest most commonly arises after a particular instance of censorship has occurred. This alone means that, from context, the protest will call to mind the original expression. If schools have the authority to censor speech solely on the basis that the speech *reminds* listeners of other speech the school censored, then schools can effectively prohibit almost all protest against

4

censorship, including protests that themselves use respectful, nondisruptive language. Because students *do* have a constitutional interest in being able to protest acts of censorship, *see supra* Part I.A., Defendants' theory sweeps too broadly.

### 2. The possibility that a student might infer what the originally-censored message was by reading Plaintiff's "censored" t-shirt is immaterial to whether that shirt is protected.

Second, Defendants are incorrect that they can censor Plaintiff's "There are censored genders" t-shirt because "everyone knew" what his other shirt said because his original expression was also constitutionally protected and because, even where the original expression was not constitutionally protected, the government cannot restrict nondisruptive speech that mimics the original expression in a non-vulgar way.

### a. Plaintiff's original shirt was protected speech, so the possibility that a student might infer that message from his "censored" t-shirt is immaterial.

Plaintiff's shirt that said, "There are only two genders" was constitutionally protected speech, so his "There are censored genders" shirt does not become unprotected because students could infer the original message. The First Circuit agrees "that *Tinker* places the burden on the school to justify student speech restrictions." *Norris*, 969 F.3d at 25. The school has not offered any sufficient justification for restricting Plaintiff's "There are two genders" shirt.

### i. Defendants have not facts to show that they made a reasonable forecast of substantial disruption.

Defendants do not claim that there was actual disruption caused by Plaintiff's shirt.[1] Rather, they acknowledge that the original complaint came from a

---

[1] Defendants identify some off-school protests and complaints received by school officials. *See* Doc. 35 at 5. But Defendants do not identify any way that these events disrupted "the operation of the school." *Tinker*, 393 U.S. at 513. And in any case, Defendants do not identify any basis for saying that these actions were caused by Plaintiff's speech. Rather, all this occurred after Defendants *censored* Plaintiff's speech, and *Defendants'* actions generated a strong public reaction. *See Zamecnik v. Indian Prairie School Dist. No. 204*, 636 F. 3d 874, 880 (7th Cir. 2011) (refusing to count public reaction to the litigation as "disruption" attributable to the students' t-shirt).

teacher,[2] who predicted that the shirt might "potentially disrupt classes." *See* Doc. No. 35 at 4. When officials restrict speech based on anticipated disruption, they must present "facts which might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities." *Tinker*, 393 U.S. at 514.

Schools may not restrict speech based on conjecture. A forecast of disruption is not "reasonable" unless it is supported by facts. For example, in *Chandler v. McMinnville Sch. Dist.*, 978 F. 2d 524 (9th Cir. 1992), the court evaluated student speech addressing a labor dispute. The school had prohibited students from wearing buttons referring to their fill-in teachers as "scabs." *Id.* at 526. The district court thought that directing an epithet to teachers was "offensive" and "inherently disruptive" and to the school had carried its burden to show a reasonable forecast of substantial disruption. *Id.* at 526, 530. The Ninth Circuit reversed, holding that, to be reasonable, a forecast of disruption must be based on facts, not an assessment of the speech as "inherently disruptive." *Id.* at 530 & n.1 (rejecting the district court's particular finding of inherent disruption and clarifying, "we are not suggesting that 'there exists a subclass of words that are inherently disruptive'").

Defendants commit a similar error. They baldly assert that "[t]he anticipated and *inevitable* disruption that would follow if Plaintiff continued to wear the t-shirt in school denying the existence of a protected class of students and the rights of transgender and gender non-conforming students to attend school free of discrimination, fear, harassment, and bullying is *evident*." Doc. No. 35 at 12 (emphasis added). As explained below, Plaintiff's speech does none of these things. But in any case, Defendants are not offering facts, they're offering their view of Plaintiff's message and regarding it as inherently (or inevitably) disruptive. This is

---

[2] Complaints about the content or viewpoint of a student's speech from school officials cannot count as disruption under *Tinker*, otherwise the government's "desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint" would always justify the restriction. *See Tinker*, 393 U.S. at 509.

6

not a sufficient basis to form a reasonable forecast of substantial disruption under *Tinker*. *See Chandler*, 978 F.2d at 530 & n.1. And it ignores the fact that it was Defendants themselves that began the discussion of gender and encouraged students to join them. That is, until Plaintiff offered a different view.

> **ii. Defendants cannot meet their burden to show that Plaintiff's t-shirt "targeted a specific student and that it invaded that student's rights."**

Defendants say that, in any case, they can restrict Plaintiff's speech saying "There are only two genders" because it "would invade the rights of others." Doc. 35 at 10. This is not correct. *Tinker* does allow restriction of speech that "involves . . . invasion of the rights of others," while insisting that students may speak "even on controversial subjects" and may not be restricted because their viewpoint on those subjects "may inspire fear" or "start an argument." 393 U.S. at 508, 513. A single instance of speech alone does not invade the rights of others. *Conduct* may—the *Tinker* Court was referring to "conduct by the student" when it referenced "invasion of the rights of others." *Id.* at 513. Or, speech that involves a degree of severity and pervasiveness such that its effect is to deprive someone of a right may meet this standard. This is why the First Circuit applies a two-part test when a school seeks to restrict speech on the ground that in invades the rights of other students. *See Norris*, 969 F.3d at 29.

First, the school must put forth "a reasonable basis for the administration to have determined" that "that the student speech targeted a *specific* student." *Id.* (emphasis added). Plaintiff's speech says what he believes, it does not target any student. Plaintiff takes issue with the premise that there are many genders, not with the "existence" of any student. Decl. of L.M. at ¶¶9–10. If Defendants' theory is correct—that expressing disagreement amounts to targeting anyone with a different view—then Defendants and the students who agree with them are invading the rights of Plaintiff by saying that his view (and his understanding of his own identity

7

based on that view) isn't true. They can't have it both ways. Plaintiff's speech did not "target" any student, let alone a "specific student," and thus cannot be restricted under the "invasion of the rights of others" prong of *Tinker*. *Norris*, 969 F.3d at 29.

Second, a school must also show that the speech actually "invaded" the rights of the specific student who was targeted. *Id.* But the First Circuit emphasized, this showing *cannot* be made by showing only that speech was "merely offensive to the listener." *Id.* at 29 n.18. While the court did not define where speech "crosses the line," it held that speech must be "more severe or pervasive bullying or harassment" in order to invade the rights of a student.[3] *Id.* Defendants cite *Doe v. Hopkinton Pub. Schs.*, 19 F.4th 493 (1st Cir. 2021) on this point, but it does not help.[4] *Hopkinton* involved a group of eight students who targeted one member of their hockey team for bullying. *Id.* at 498–99. The group took photos and videos of the student without his permission, mocked his voice and appearance, mocked his family, and tried to get him to say inappropriate things while surreptitiously recording him. *See id.* at 499–500. Two students were involved in a group chat in which the eight students egged one another on to bully their victim but did not participate in any of the acts directed at the targeted student. *See id.* at 506. The court found that their speech was unprotected because it "*actively* and *pervasively* encourage[d] bullying" and "foster[ed] an environment in which bullying is

---

[3] The First Circuit also carefully polices causation under this second prong. Speech cannot be punished unless Defendants "establish a link between" the speech and the harm suffered. *Norris*, 969 F.3d at 31. Defendants identity some serious harms, like suicidality. *See* Doc. 35 at 7. But they bear the burden of showing that Plaintiff's expression causes these harms, and generalized references to "LGBTQ+ status and treatment" as a "major factor" in those harms does not connect them to Plaintiff's respectful expression of his own view. *Id.* The best scientific evidence presents a much more complex picture about suicidality in the context of children who identify as transgender. *See, e.g.*, Expert Report of James M. Cantor, PhD 31–32, ECF No. 66-17 PageID # 2407–08, *Josephson v. Ganzel*, No. 3:19-cv-00230-RGJ-CHL (Oct. 29, 2021).

[4] Defendants also cite *Harper v. Poway Unified. Sch. Dist.*, 445 F.3d 1166, 1178 (9th Cir. 2006) several times. *See* Doc. 35 at 11–12, 15–16. Defendants do acknowledge that the Supreme Court vacated this opinion as moot, it should be noted that the Supreme Court explained that it was doing so in part to "clea[r] the path for future relitigation of the issues" *Harper ex rel. Harper v. Poway Unified Sch. Dist.*, 549 U.S. 1262, 1262 (2007) (cleaned up). *Harper*'s analysis is not binding anywhere, even in the Ninth Circuit. *Id.*

acceptable *and actually occurs.*" *Id.* at 509 (emphasis added). *See also Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy*, 141 S. Ct. 2038, 2045 (2021) (schools may regulate "severe bullying or harassment targeting particular individuals"). The *Hopkinton* court specified that the students "were not punished because [the targeted student] was offended by the content of their messages." 19 F.4th at 508.

Plaintiff's expression of his own view about gender does not "actively or pervasively encourage[] bullying" against anyone. *Id.* at 509. If expressing one view about a subject implies that other views are false and this implication alone amounts to bullying, then the school's expression (and the expression it encourages other students to engage in) on matters of sexual orientation and gender is also bullying. After all, "religious affiliation" is a protected class under the school's policy too, yet the school's speech celebrating certain views about sexual orientation and gender identity as a matter of "Pride" implies that any religion that takes a different approach is false on that point. *See* Complaint, Ex. D, Doc. No. 11-6 at 3 (describing the school's "Pride" festivities).

### iii. Defendants undermine their own interests in inclusion by incorrectly branding Plaintiff's view as "hateful."

Defendants have even expressly disparaged Plaintiff's view. They say, on the one hand, that they "have the responsibility by law to provide a safe and inclusive environment for *all students.*" Doc. No. 35 at 2 (emphasis added). But then, not only do they promote messages that merely *imply* that Plaintiff's view is false, they explicitly call Plaintiff's view a "hateful message." *Id.* at 14. This undermines the interest in maintaining an "inclusive environment for all students" far *more* than Plaintiff's speech, which does not disparage anyone. Defendants have taken the unfortunate position that some feelings count, but not the Plaintiff's.[5] This is

---

[5] *See* Hr'g Tr. 33:24–34:3 (THE COURT: "But if the plaintiff is also saying, "I am feeling like I can't exist holding these views here," is that a valid concern? MS. ECKER: "No, not for these purposes. No, it's not because it's not protected speech.").

9

unconstitutional. And in any case, Plaintiff's view is not hateful, and one of his purposes in trying to express that message at school is to counter this false narrative. Decl. of L.M. ¶¶ 8, 12–13.

The way out of this trap is to recognize that expressing one's own beliefs in a nondisruptive, respectful manner does not invade the rights of others, even if one's own view is mutually inconsistent with someone else's. This Court reached exactly this conclusion in *Pyle*, that "while a school can bar a T-shirt that causes a material disruption, it cannot prohibit one that merely advocates a particular point of view and arouses the hostility of a person with an opposite opinion." 861 F. Supp. at 171. The Court stated this rule when it was addressing a markedly similar dress code provision which barred clothing that "harasses, intimidates, or demeans an individual or group of individuals because of sex, color, race, religion, handicap, national origin or sexual orientation." *Id.* at 163. The Court held that this provision, unless it is limited to speech that also causes material disruption, restricts speech "simply based upon the viewpoint expressed." *Id.* at 172 (cleaned up).

Defendants' Speech Policy commits an identical error. Defendants claim the authority to prohibit speech that "may reasonably be considered intimidating, hostile, offensive or unwelcome based on race, color, religion, national origin, sex, sexual orientation, gender identity or any other status protected by law and/*or* may otherwise be reasonably likely to lead to a disruption of its operations." Complaint, Ex. G, Doc. No. 11-9 at 2 (emphasis added). Because they prohibit speech even in circumstances where it is not disruptive, does not target particular students, and does not rise to the level of invading the rights of others, their policy is unconstitutional. The school's "desire to teach students tolerance of persons with a different religion, race, gender, or sexual orientation is certainly admirable. However, the school cannot silence speech that runs contrary to this laudable goal." *See Pyle*, 861 F. Supp. at 172. And it certainly can't silence speech they claim is not

inclusive while directly disparaging Plaintiff's view (along with the view of many religious students) as "hateful." Doc. 35 at 14.

### b. Speech protesting censorship is protected, even where the originally-censored speech was not protected.

Even where school officials lawfully censor a t-shirt, they cannot restrict all expression protesting the censorship, even when the protest uses expression that reminds the audience of the original expression. For example, in *Pyle*, the school censored a shirt that said, "Coed Naked Band: Do It To the Rhythm." 861 F. Supp. at 158. The censored student responded by creating a number of different t-shirts, including one that said "Coed Naked Civil Liberties: Do It To The Amendments" (which the school also prohibited) and "Coed Naked Censorship — They Do It In South Hadley" (which the school did not prohibit). *Id.* at 162–63. This Court, applying a *Fraser* vulgarity analysis, upheld the school's restrictions of two of the shirts based on the language *on those shirts*. *See id.* at 170. The Court held that school officials may determine "the limits on vulgarity" within the bounds of reasonableness, but may not use "the prohibition [on vulgarity] as a pretext" or restrict speech that is not patently vulgar. *Id.*

Here, Defendants claim authority the Constitution denies: the ability to restrict speech that *is not* patently vulgar or otherwise unprotected simply because "everyone knew" what the originally-censored speech was that Plaintiff was protesting. This claim undermines the strong interest Plaintiff has in being able to protest censorship and would also deprive students of their ability to protest censorship generally (even with respectful, nondisruptive language) because most instances of protest involve situations where many people know what was originally censored. The proper approach is the one this Court approved in *Pyle*: speech must be assessed based on the words of that speech, not based on the words that a person might recall as a result of the speech. *See also Holloman*, 370 F.3d at 1280 (holding

11

that the constitutionality of speech restriction must be assessed independently of the character of the speech, since officials may violate the Constitution if they restrict even unprotected speech for improper reasons).

### C. Defendants cannot meet their burden to provide facts supporting any basis for censoring Plaintiff's t-shirt protesting their censorship of some views about gender.

Since Defendants cannot restrict Plaintiff's speech protesting their censorship on the grounds that it may remind students of Plaintiff's "There are only two genders" shirt, Defendants have the burden to meet the regular standard for restricting this speech. *See Norris*, 969 F.3d at 25. Defendants cannot show any facts to support restricting Plaintiff's speech protesting their censorship of some views about gender by wearing a shirt that says "There are censored genders."

#### 1. Defendants cannot show any substantial disruption or facts supporting a reasonable forecast of substantial disruption.

To meet their burden, Defendants need to offer facts supporting the reasonableness of their forecast of disruption—they cannot simply brand the content of the speech "inherently disruptive," *Chandler*, 978 F.2d at 530 &n.1 or baldly claim that the disruption is "inevitable." Doc. 35 at 12. Defendants must also show that any disruption they do identify or reasonably anticipate is attributable to the Plaintiff's speech, not to their own actions censoring the Plaintiff or the publicity that is associated with their actions. *See See Zamecnik* 636 F. 3d at 880 (refusing to count public reaction to the litigation as "disruption" attributable to the students' t-shirt).

Given the ubiquity of expression on this topic in the school, *see* Complaint, Doc. No. 11 at 9, 11–12 (¶¶ 58–62, 80–81), Defendants cannot reasonably forecast that opposing the censorship of Plaintiff's view will cause substantial or material disruption. And, in any case, they have offered no facts to suggest that it will, which means they cannot carry their burden on this point. *See Norris*, 969 F.3d at 25;

*Chandler*, 978 F.2d at 530; *Tinker*, 393 U.S. at 511 ("In the absence of a specific showing of constitutionally valid reasons to regulate their speech, students are entitled to freedom of expression of their views.").

### 2. Defendants cannot show that Plaintiff's speech protesting Defendants' censorship involved "invasion of the rights of others."

Defendants also cannot show that wearing a t-shirt that says "There are censored genders" involves an invasion of the rights of others under *Tinker*. Plaintiff's shirt does not "target[] a specific student" because Plaintiff is protesting an action by the administration. *See Norris*, 969 F.3d at 29. In addition, Plaintiff's expression does not invade the rights of any student (let alone at a severe or pervasive level) because, again, the message is about the censorship of certain views—it does not express anything one way or the other on any subject other than censorship. *See id.* at 33 (noting that a message that could be read as addressed to the administration "weakens the causal link" between the speech and any alleged bullying). In reality, by protesting the censorship of student speech, Plaintiff's is speaking up in *defense* of the rights of all students, not doing anything that could be conceivably characterized as invading anyone's rights.

## II. Defendants are violating Plaintiff's right to due process of law by enforcing their Speech Policy to censor his t-shirt protesting their censorship of some views about gender.

The application of Defendants' Speech Policy to the "There are censored genders" shirt highlights the policy's shortcomings as a matter of due process. Due process requires both adequate notice of what speech is prohibited and "explicit standard" to limit the discretion of officials who apply the policy. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The Speech Policy fails in both respects.

The Policy says that "Clothing must not state, imply, or depict hate speech or imagery that targets groups based on race, ethnicity, sexual orientation, gender identity, religious affiliation, or any other classification." Complaint, Ex. C, Doc. No.

13

11-5 at 46. "There are censored genders" is a message about censorship; it communicates nothing substantive about gender or "any other classification." *Id.* Nevertheless, Defendants restricted this speech. This shows that Plaintiff has no adequate notice of his obligations under the Speech Policy, which violates his right to due process. *See Grayned*, 408 U.S. at 108.

The Speech Policy also gives enforcing officials unlimited discretion to decide what is prohibited. It states that it is "governed by health, safety and appropriateness." Doc. No. 11-5 at 45. It prohibits "[a]ny other apparel that the administration determines to be unacceptable to our community standards" without confining that discretion in any way. *Id.* at 46. Defendant Lyons, in explaining the school's initial enforcement of the Policy against Plaintiff, also cited the provision on "appropriateness" and said, "appropriateness comes at the discretion of the building administration." Complaint, Ex. E, Doc. No. 11-7 at 2. Thus, whether it's Defendants over-expansive definition of what speech may "invade the right of others," Doc. 35 at 10, or their claim that speech protesting censorship can be restricted because "everyone knows" what the original message is, Hr'g Tr. 28:5, Defendants are ultimately claiming authority to restrict any speech they do not like or do not want to deal with. The Constitution does not tolerate such authority in any sphere, but especially when it comes to speech. *See Stephenson v. Davenport Cmty. Sch. Dist.*, 110 F.3d 1303, 1310 (8th Cir. 1997).

## CONCLUSION

Plaintiff is likely to succeed on the merits of his claims. Because the additional preliminary injunction factors weigh in his favor as described in his initial memorandum, *see* Mem in Supp. of Pl's Emergency Mot. For TRO and MPI Doc. No. 13 at 18–20, this Court should grant the requested preliminary injunction.

Respectfully submitted this 6th day of June, 2023.

Andrew Beckwith
MA Bar No. 657747
MASSACHUSETTS FAMILY INSTITUTE
401 Edgewater Place, Suite 580
Wakefield, MA 01880
Telephone: (781) 569-0400
andrew@mafamily.org

*s/ P. Logan Spena*
David A. Cortman*
GA Bar No. 188810
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
Facsimile: (700) 339-6744
dcortman@ADFlegal.org

Tyson C. Langhofer*
P. Logan Spena*
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, Virginia 20176
Telephone: (571) 707-4655
tlanghofer@ADFlegal.org
lspena@ADFlegal.org

*Attorneys for Plaintiff*

**Admitted Pro Hac Vice*

15

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2023, I electronically filed the foregoing using the CM/ECF system, which automatically sends an electronic notification with this filing to the following attorneys of record:

Deborah I. Ecker
Gregg J. Corbo
KP Law, P.C.
101 Arch Street
Boston, MA 02110
617-654-1714
617-556-0007
Fax: 617-654-1735
decker@k-plaw.com
gcorbo@k-plaw.com

Garrett A.D. Gee
John M. Simon
Kay H. Hodge
Stoneham, Chandler & Miller LLP
99 High Street
Boston, MA 02110
740-644-9406
617-542-6789
Fax: 617-556-8989
ggee@scmllp.com
jsimon@scmllp.com
KHodge@scmllp.com

Dated: June 6, 2023                             *s/ P. Logan Spena*

                                                P. Logan Spena
                                                *Attorney for Plaintiff*